## SMITH v SEILER

Ohio Appeals, 2nd Dist, Miami Co

No 313.   Decided Jan 2, 1933

Baird Broomhall, Troy, and A. W. De-Weese, Piqua, for plaintiff in error.

Shipman & Shipman, Troy, for defendant in error.

## OPINION

By HORNBECK, PJ.

Several claims of error are urged in the various briefs of counsel for plaintiff. It is claimed, first, that the court erred in admitting evidence of the plaintiff elicited by cross-examination of counsel for the defendant, as appearing at pages 64-66, inclusive, of the record. This line of questioning related to certain averments in the original petition filed by the plaintiff, to which Morris Goldstone was made a party and in which certain alleged acts of negligence of Goldstone were averred. Thereafter, Goldstone was dismissed as a party defendant, an amended petition filed, and the cause proceeded against the defendant Smith only.

The testimony was offered upon the theory of admissions against interest theretofore made by a party to the suit. Goldstone's negligence was a matter for consideration in the instant cause and was pertinent to the issues, especially under the averment of the answer of the defendant that Goldstone's negligence was the sole cause of plaintiff's injuries. Insofar as plaintiff had theretofore made statements tending to support the claim of the defendants, this testimony was competent, relevant and admissible. We are satisfied that it was properly admitted.

It is asserted that the verdict was rendered under the influence of passion and prejudice. We do not find anything which would require us to support this contention of the plaintiff.

Finally, it is urged that the verdict and judgment were manifestly against the weight of the evidence and contrary to law.

Before discussing this from the standpoint of the plaintiff's claim, we consider one phase of the defense offered, namely, that the verdict should be supported because it appears that the plaintiff's injuries were the result of pyorrhea and not because of the collision. Suffice to say, respecting this defense, that the answer of the defendant admits that the plaintiff suffered some injury as a result of the collision between the car in which he was riding and the truck. This would require a verdict in some amount in the event that plaintiff was entitled to recover.

Plaintiff being a passenger in the automobile in which he was riding and which defendant was driving, if defendant was negligent in either of the particulars averred in the petition and such negligence was a proximate cause of injury to the plaintiff, he is entitled to recover. Thus, the negligence of Goldstone, if any, would not relieve the defendant from liability unless this negligence was the sole cause of the collision. Therein is presented the close question in this case. It caused the eminent trial judge much concern as appears by his action in first sustaining the motion for new trial and then setting aside his order and from his opinion rendered at the time of final action. We are satisfied that there is ample support in the record of a finding of negligence against Goldstone proximately causing plaintiff's injury. To determine that defendant was free from any negligence contributing to cause plaintiff's injuries is more difficult. Dr. Seiler was familiar with the road over which he was driving. He testifies at page 112 of the record:

"Q. Dr. Seiler, will you state, if you remember it, the position of that truck when you first saw it in relation to its position on the road:

A. About diagonal; the left rear almost out to the middle of the road.

Q. And where was the front of the truck, Doctor?

A. Towards the ditch, inclined to the right."

And further, on page 113:

"Q. Now then, Doctor, as you came down the road what did you observe, if you observed anything, as you came north on the Marion-Prospect highway—where were you looking?

A. I don't remember seeing anything.

Q. Did you see a car approaching from the north coming south? A. Yes.

Q. About how far was that away from you when you first saw it?

A. Oh, 1000 or 1500 feet.

Q. Was that on a flat or a grade?

A. A grade.

Q. Was the car to the north on a grade?

A. Coming down from the grade.

Q. Do you remember the condition of the lights of that car as it was approaching you?

A. I thought he had on his bright lights.

Q. Did you have your bright lights on or your dimmers?

A. Bright lights.

Q. Now, Doctor, did you keep your eyes right straight down that road?

A. Yes, sir, to the best of my ability.

Q. When was the first you saw this object or truck in the road?

A. About 30 or 40 feet.

Q. Then what did you do?

A. Turned the car to the left and applied the brakes.

Q. Doctor, after the accident occurred, did you go around and examine this truck?

A. Yes, sir.

Q. And did you see the tail-light?

A. Yes, sir.

Q. What condition was that tail-light in?

A. Muddy and dirty.

Q. Did you see any lights on the truck before the crash occurred? A. No, sir."

As is indicated by the questions and answers, as the defendant approached the parked truck he observed an automobile approaching from the north. The automobile was operated by one Harry Reynolds of Prospect, Ohio, and was about 35 to 50 feet away from the truck when the collision occurred. Thus, it is apparent that there was an abstraction requiring some of the attention of the defendant as he approached the parked truck. It is undenied in the record that the night was clear and that the bright headlights of the car which defendant was driving were burning and in good condition. It appears that there were several trees on the east side of the highway which would cause shadows at intervals on the roadway. It also appears that there was an up-grade on Route 4, the incline being to the north, the direction in which the defendant was traveling.

It is testified that the body of the truck was some 50 inches from the ground; that the automobile driven by defendant struck its right parking light against a projection on the left of the truck; that all of the hood and the engine in front of the right

parking light had gone under the left portion of the truck. It appears that after the defendant saw the truck, when within some 30 or 40 feet from it, he put on his brakes, skidded, and was unable to stop until the time of the collision.

It is a well-recognized principle of law that a person in a given situation must exercise his faculty of sight as . the case may be, as a reasonably prudent man would so exercise it in the same or similar circumstances. It is the claim of the plaintiff that in no interpretation of the facts in this case could the jury have properly determined that the defendant, in the exercise of due care, should have failed to see the parked truck in the highway and to have avoided the collision. It is the claim of the defendant that because of the approaching vehicle from the north, the character of the road, it being asphalt, the height of the bed of the truck over the wheels, the crates above, the shadows cast upon the road and the fact that there was some testimony that the tail-light on the truck was muddy and dirty, that the car of plaintiff was being driven up a slight grade, all permitted the jury to say that under the circumstances present in this particular case, the defendant was not liable.

Counsel in the numerous briefs presented have argued at great length the application of that portion of §12603 GC which provides:

"No person shall drive any motor vehicle in and upon any public road or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead."

An examination of the charge discloses that the court said nothing whatever to the jury about this section, nor its application to the facts. This seems a little unusual in view of the stress which was placed upon this phase of the case, but an examination of the amended petition supports the court in the charge as given.

There is no specification of negligence based upon a violation of the statute. It is true that the amended petition, among the first paragraphs, contains averments which have express reference to that portion of §12603 GC which we have quoted but when the pleader comes to specify the acts of negligence upon which the plaintiff relies no mention is made of the section nor such facts as would require the trial court or this court to consider the statute. Thus, there is removed from review a most

interesting question respecting the application of the statute a violation of which is negligence per se.

Consideration of the case, then, must relate solely· to the specifications of negligence as averred in the petition and to the question whether or not Dr. Seiler failed to exercise ordinary care in either of these particulars as he approached the automobile of the Goldstones.

How far can we indulge liberality of construction in favor of the due care of the defendant on the record in this case? Although there is some difference of testimony as to the exact location of the truck in the highway, it is testified by all that it was well out into the eastern half thereof. Thus, at the time that the defendant was approaching the truck there was extending almost half-way across his portion of the highway a six wheel truck with loaded crates of chickens thereon. It is difficult to see how reasonable minds could hold that the defendant, in exercising his faculties . as an ordinarily prudent man would be required to do, could have failed to see this truck in his line of movement in ample time to have permitted him to bring his car to a stop. Had the projection into the thoroughfare been slight, or had it been a projecting portion of the truck above the highway proper, it would present a question of fact whether or not he was required to take in all of his half of the highway, in view of the fact that he was meeting an oncoming vehicle. We recognize that no driver can be required at all times, in the face of the necessity of meeting and passing approaching vehicles, to keep within the range of his vision all of his portion of the road, but to say that the defendant on the facts in this case would be exercising ordinary care in failing to see a truck which was extended over into approximately half of his right of way, is counter to common experience of the proper use of one's eyes; nor does the fact that the rays of light from the defendant's automobile may have been somewhat shortened because of the upgrade of the road to the south, in our judgment affords a satisfactory reason for failing to see the truck of Goldstone as it was placed in the road.

The physical facts at the time and immediately prior to the collision lend the strongest support to the theory that Dr. Seiler should have seen the parked truck in time to have avoided the collision. Then, too, other witnesses in positions in the road similar to that of Dr. Seiler saw the truck. John Bush was on the road and moving in the same direction that Dr. Seiler was

moving. The Seiler car passed him about a thousand feet from the accident. Bush says that the night was so clear "That along the river I turned my lights off to see if it could be done and it was clear enough to see the road very clear;" that he was able to drive without his headlights.

At page 73 he says that after Dr. Seiler had passed him moving about 45 or 50. miles an hour, if not faster, he saw the truck of the Goldstones by the light of the Seiler car when it was some 750 feet from the truck. He also makes this significant statement that Dr. Seiler's light lit up the back part of the truck. That Dr. Seiler was driving very fast is supported not only by the testimony of John Bush, who says that Seiler was moving about twice as fast as Bush's car, but also by the skid marks of the Seiler car showing for a distance of 35 feet to the south of the Goldstone car.

After a careful consideration of the case, a thorough reading of the testimony, full consideration of the splendid briefs helpfully provided by counsel, we are required to say that upon the contradictory statements in the record we would not disturb the determination of the jury, but upon the established physical facts we are convinced that the verdict was contrary to and manifestly against the weight of the evidence.

The judgment will, therefore, be reversed and cause remanded.

KUNKLE and BARNES, JJ, concur in judgment.